UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNION ELECTRIC COMPANY d/b/a AMEREN MISSOURI, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) ) Case No. 4:12CV877 JCH |
| AEGIS ENERGY SYNDICATE 1225, | ) ) ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Compel Alternative Dispute Resolution and to Stay This Case, filed on May 22, 2012. ("Motion to Compel," ECF No. 7). This matter is fully briefed and ready for disposition.

**BACKGROUND[1]**

Plaintiff Union Electric Company d/b/a Ameren Missouri ("Plaintiff" or "UEC") is a Missouri public utility with its headquarters and principal place of business in St. Louis, Missouri. (Complaint, ECF No. 6, p. 1). On December 14, 2005, the upper reservoir wall of Plaintiff's Taum Sauk hydroelectric power plant ("Taum Sauk") failed. (Id., ¶ 1). The failure caused over one billion gallons of water to be released from the reservoir, causing bodily injury as well as damage to state property, natural resources, and property belonging to private landowners. (Id.).

Plaintiff had purchased a $25 million excess liability insurance policy ("the Policy") from Defendant Aegis Energy Syndicate 1225 ("Defendant" or "Aegis"), a Lloyd's of London insurance syndicate, for the period that included the date of the Taum Sauk breach. (Id., ¶ 2). Defendant

---

[1] The majority of the facts in the Court's background section are taken directly from Plaintiff's Complaint. Defendant has not yet filed an Answer to Plaintiff's Complaint.

denied coverage under the Policy for Plaintiff's costs incurred with respect to claims against Plaintiff relating to the breach. (Id., ¶ 3).

The Policy contains the following provisions:

**IV. CONDITIONS**

...

(R) *Dispute Resolution and Service of Suit*

...

> (3) Arbitration. Any controversy or dispute arising out of or relating to this FOLLOWING FORM AEGIS POLICY, or the breach, termination, or validity thereof, which has not been resolved by non-binding means as provided herein within ninety (90) days of the initiation of such procedure, shall be settled by binding arbitration in accordance with the then current CPR Institute Rules for
> Non-Administered Arbitration of Business Disputes (the "CPR Rules") by three (3) independent and impartial arbitrators. The INSURED and the UNDERWRITER each shall appoint one arbitrator; the third arbitrator, who shall serve as the chair of the arbitration panel, shall be appointed in accordance with the CPR Rules.
>
> ...
>
> The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. 1 et seq., and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof.

(Exhibit A to Complaint, ECF No. 1-3, p. 10).

The Policy also contains the following provisions:

**ENDORSEMENT NUMBER:    TWO**

**POLICY DISPUTES**

Notwithstanding anything contained in this Policy to the contrary, any dispute relating to this Insurance or to a CLAIM (including but not limited thereto the interpretation of any provision of the Insurance) shall be governed by and construed in accordance with the laws of the State of Missouri and each party agree to submit to the jurisdiction of the Courts of the state of Missouri.

(Exhibit A to Complaint, ECF No. 1-5, p. 17).

Plaintiff filed this lawsuit in the Circuit Court for the City of St. Louis, State of Missouri, on April 6, 2012. (Notice of Removal, ECF No. 1, ¶ 2). Defendant removed this lawsuit on May 15, 2012, on the basis of diversity jurisdiction. Plaintiff's Complaint contains two counts: breach of contract and vexatious refusal to pay. As noted above, Defendant filed its Motion to Compel on May 22, 2012, arguing that the Policy requires Plaintiff to pursue arbitration to resolve its claims against Defendant.

## **DISCUSSION**

Under Eighth Circuit law, "[b]efore a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." Houlihan v. Offerman & Co, Inc., 31 F.3d 692, 694-95 (8th Cir. 1994) (citation omitted). The Eighth Circuit continued:

> A federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement. 9 U.S.C. §§ 3 & 4. An agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. at § 2...[Further], we are mindful that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Houlihan, 31 F.3d at 695.

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT &T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

Id. at 649. Ordinary state law contract principles are applied to decide whether parties have agreed to arbitrate a particular matter. Keymer v. Management Recruiters Intern., Inc., 169 F.3d 501, 504 (8th Cir. 1999). According to Endorsement Two of the Policy, Missouri law governs in this case. See id.

Under Missouri law, insurance policies are treated as contracts, and the rules of contract construction apply. See United Fire & Cas. Co. v. Gravette, 182 F.3d 649, 658 (8th Cir. 1999); Lupo v. Shelter Mut. Ins. Co., 70 S.W.3d 16, 19 (Mo. Ct. App. 2002). The "'plain, ordinary, and usual meaning of a contract's words are used, and the whole document is considered'" when analyzing a claim. Kelly v. State Farm Mut. Auto. Ins. Co., 218 S.W.3d 517, 522 (Mo. Ct. App. 2007) (quoting Jackson County v. McClain Enters., Inc., 190 S.W.3d 633, 640 (Mo. Ct. App. 2006)). In construing the terms of an insurance policy, a court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured. Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 690 (Mo. 2009). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Id. (quoting Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007)).

"It is well established that if the language of an endorsement conflicts with language found in the general provisions of an insurance policy, the language found in the endorsement will prevail." White v. Illinois Founders Ins. Co., 52 S.W.3d 597, 598 (Mo. Ct. App. 2001).

Here, the plain language of the Policy suggests the parties did not intend to submit disputes related to the Policy to arbitration. Defendant argues the arbitration provision in Section IV(R)(3) does not conflict with Endorsement Two, as Endorsement Two "governs *where* policy disputes shall be resolved and *which law* applies." (Defendant's Reply in Support of its Motion to Compel

Alternative Dispute Resolution and to Stay This Case ("Defendant's Reply"), ECF No. 28, p. 3). Defendant goes on to assert that Endorsement Two simply provides that the arbitration proceeding between Plaintiff and Defendant should take place in Missouri and that the arbitration panel should apply Missouri law. (Id., p. 4). Defendant's argument ignores that Endorsement Two provides that the parties "agree to submit to the jurisdiction of the Courts of the state of Missouri." Endorsement Two does not only provide that arbitration will occur in Missouri and apply Missouri law--rather, Endorsement Two explicitly states that the parties agree to resolve disputes involving the Policy in Missouri courts. Therefore, Endorsement Two is in direct conflict with the arbitration provision in Section IV(R)(3), and the language in Endorsement Two controls the interpretation of the Policy. See White, 52 S.W.3d at 598.

Even if the Court did not find that Endorsement Two clearly requires both parties to submit policy disputes to the jurisdiction of Missouri courts, the inclusion of Endorsement Two renders the Policy ambiguous at best. Since the Court must resolve all ambiguities in favor of the insured, see Jones, 287 S.W.3d at 690, the Policy would still permit Plaintiff to pursue its claims in its chosen forum.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Alternative Dispute Resolution and to Stay This Case (ECF No. 7) is **DENIED**.

Dated this  23rd  day of August, 2012.

                                               /s/Jean C. Hamilton
                                               UNITED STATES DISTRICT JUDGE